**STATE of Missouri, Respondent,**

v.

**Carlos L. ROBERTSON, Appellant.**

**No. WD 68097.**

Missouri Court of Appeals,
Western District.

Sept. 2, 2008.

Laura G. Martin, Kansas City, MO, for appellant.

Evan J. Buchheim, Jefferson City, MO, for respondent.

Before JAMES M. SMART, JR., P.J., THOMAS H. NEWTON, and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Judge.

Carlos Robertson appeals his convictions for first-degree burglary, misdemeanor stealing, and first-degree property damage. We reverse and remand in part and affirm in part.

## Factual and Procedural Background

Mr. Robertson was charged with first-degree burglary, section 569.160.1,[1] first-degree property damage, section 569.100, and misdemeanor stealing, section 570.030.1. The State amended the property charge from first-degree to second-degree, section 569.120, after jury selection but before evidence was presented.

At trial, the victim testified that she told a 911 operator that someone was trying to pry her front door open; she did not provide a description of the person. She heard a bang downstairs then the home alarm sounded and the telephone disconnected because it was tied into the alarm system. Beneath her, she heard footsteps on the hardwood floors. She spoke with a 911 operator again who told her the police were in pursuit of a suspect. She remained upstairs until the police told her it was safe to come down. Her front door was damaged and had pry marks on it; she estimated the damage to be $250.00.

Scott Nelson, a Kansas City police officer, testified that he and his partner, David McKinzie, received a call reporting a prowler at 4205 Highland at 11:08 pm, three minutes after the victim called 911. Suddenly, the dispatcher heightened the call to a burglary in progress. Officer Nelson immediately activated the lights and sirens, which in turn activated the dash camera, and sped to the address. According to the video played at trial, the police arrived one block north from the victim's address at 11:12. The police did not have the sirens or lights on as they approached, and they observed a person dressed in dark clothing run west from 4205 Highland and cross the street; no one else was on the street. They turned west on 42nd Street, and Officer McKinzie exited the vehicle to search for the suspect. Shortly thereafter, Officer McKinzie saw a person running toward the backyards of houses located on Wayne, directly west of Highland. He then lost sight of the individual but could hear dogs barking. Officer McKenzie radioed Officer Nelson that he had someone in a backyard.

Officer Nelson pursued in his vehicle to secure a perimeter; the videotape recorded the time as 11:13. He pulled in a vacant lot across the street from the victim's address on Highland. Officer Nelson's location allowed him to view the backyards of the homes on Wayne, where his partner was located. He observed a man dressed in all black, later identified as Mr. Robertson, in a backyard pacing back and forth on a deck while dogs barked at him. Officer Nelson stated that he was unsure if the man on the deck was the same suspect, but he matched the description of the suspect they had observed earlier. He decided to make verbal contact with Mr. Robertson because the dogs were still barking. He also noticed someone was watching from the back window of the house above the deck where Mr. Robertson was located. Mr. Robertson told Officer Nelson: (1) the party that the officer was looking for went that way, pointing in a northerly direction; (2) the dogs belonged to him; and (3) that he lived there, failing to provide the address. At some point, Officer Nelson observed the man

---

1. Statutory references are to RSMo 2000 and the Cumulative Supplement 2007.

remove his coat, later identified as the victim's leather jacket, and set it on the corner of the deck. Officer Nelson thought this strange because it was a cold November night.

Steven Griswold, another officer who arrived at the scene, testified that he arrested Mr. Robertson after his partner told him the homeowner stated that Mr. Robertson did not live there at 4209 Wayne. The homeowner also testified, stating that he saw from his window the man holding a dark object in his hand while on the deck. Mr. Robertson was escorted off the deck, and a black leather coat that was next to him in a wad in the corner of the deck was removed. Mr. Robertson told Officer McKinzie that he ran because he thought they had an arrest warrant for him; he did not possess any burglary tools. The police went to the victim's home; she identified the black leather jacket as the one missing from the banister of her staircase, which was within a few steps of the front door.

Mr. Robertson moved for an acquittal at the close of the State's evidence; the trial court denied it. Mr. Robertson did not testify or present any witnesses. He argued that the evidence showed someone broke into the victim's house and stole her jacket, but the evidence was insufficient to identify him as the culprit. At the close of all evidence, he moved again for an acquittal on all three counts, which the trial court denied. The trial court instructed the jury on the charges including second-degree property damage. The jury returned verdict forms, finding Mr. Robertson guilty of first-degree burglary, misdemeanor stealing, and first-degree property damage.

Mr. Robertson filed a motion for judgment of acquittal notwithstanding the jury's verdict as to each conviction, and in the alternative, a motion for new trial alleging several errors including: (1) trial court erred in denying motion for judgment of acquittal, and (2) the trial court erred in overruling his motion to quash the venire panel. On February 2, 2007, the trial court denied the motion, entered judgment in accordance with the verdicts, and sentenced Mr. Robertson to ten years of imprisonment for the burglary conviction, three years of imprisonment for the property damage, and one year in county jail for the misdemeanor stealing conviction—all to run concurrently. On March 8, 2007, the prosecutor filed a motion for judgment *nunc pro tunc* to correct the judgment to reflect a conviction for second-degree property damage, the offense for which Mr. Robertson was charged, rather than first-degree property damage, the offense the verdict form reported. The trial court failed to rule on the motion. Mr. Robertson appeals.

## Legal Analysis

Mr. Robertson claims the trial court erred: (1) in instructing the jury with a verdict form for *first-degree* property damage because the verdict director instructed the jury on the elements of *second-degree* property damage; (2) in overruling his motion for judgment of acquittal at the close of all evidence as to the conviction for first-degree property damage because the State's evidence was insufficient to support such a finding; (3) in overruling his motion for judgment of acquittal at the close of all evidence as to the convictions for first-degree burglary, first-degree property damage, and misdemeanor stealing because the State's evidence was insufficient to support such findings; and (4) in overruling his motion to quash the venire panel because it did not represent a fair-cross section of the Jackson County community.

We will first address Mr. Robertson's third point because the discussion of it disposes of points one and two. In his

third point, Mr. Robertson argues that the trial court erred in overruling his motion for an acquittal on all three counts because the evidence was insufficient to convict him. Specifically, Mr. Robertson argues that the evidence shows someone committed the charged offenses, but does not support a finding beyond a reasonable doubt that he was the culprit.

Our review of a sufficiency of the evidence claim is limited to determining whether sufficient evidence existed for a reasonable juror to find each element of the offense beyond a reasonable doubt. *State v. Fyfe*, 922 S.W.2d 71, 74 (Mo.App. W.D.1996). We must view all evidence and inferences therefrom in the light most favorable to the verdict, disregarding contrary inferences unless the "contrary inference ... would necessarily give rise to a reasonable doubt in a reasonable juror's mind." *State v. Grim*, 854 S.W.2d 403, 413 (Mo. banc 1993). We do not weigh the evidence or determine witnesses' credibility. *Fyfe*, 922 S.W.2d at 74.

Mr. Robertson argues that the circumstantial evidence presented at trial was insufficient to prove beyond a reasonable doubt that he committed the crimes because the victim did not provide a description of the intruder; he did not possess any tools that would allow him to pry open the door; and he lived in the area. Mr. Robertson claims that the officer's observation of him removing a jacket and the stolen jacket being near him at the time of arrest only supports an inference that he was in possession of a piece of stolen property.

"[P]resence of the defendant at the scene of the crime and his flight may be considered as indicia of guilt and will support conviction when coupled with other circumstantial evidence showing active participation in the offense." *State v. Harrison*, 698 S.W.2d 564, 566 (Mo.App. E.D. 1985). Additional evidence such as defendant's possession of recently stolen property from a burglarized place supports an inference of guilt as to burglary and stealing offenses.[2] *See id; see also State v. Brown*, 716 S.W.2d 436, 438 (Mo.App. S.D. 1986); *State v. Smith*, 708 S.W.2d 228, 229 (Mo.App. E.D.1986). Mr. Robertson was found with the recently stolen jacket in his possession within a block of the crime scene and within minutes of the burglary. The evidence also supports a finding that the officers saw him fleeing from the scene. The circumstantial evidence was sufficient for the jury to infer that he was the burglar and thief. Thus, the evidence is sufficient to support the burglary and stealing convictions.

To prove that Mr. Robertson committed first-degree property damage, the State had to show (1) Mr. Robertson knowingly damaged property of another and (2) the damage exceeded $750.00. *See* § 569.100. Evidence that defendant was near the scene of crime and possessed stolen items from the property that was damaged is sufficient evidence that the defendant damaged the property to obtain the stolen items. *See State v. Walker*, 755 S.W.2d 404, 409 (Mo.App. E.D.1988). Because the evidence supports the inference

---

**2.** To prove that he committed first-degree burglary, the State had to show that Mr. Robertson "knowingly enter[ed] unlawfully ... a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom .... [t]here is present in the structure another person who is not a participant in the crime." § 569.160. To prove he was guilty of stealing, the State had to show that he "appropriate[d] property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." § 570.030.1.

that the officers saw Mr. Robertson running from the burglarized home within minutes of the burglary and that he possessed the stolen jacket, the evidence was sufficient for the jury to infer that he damaged the door to gain entry into the victim's home and then stole the jacket.

However, as Mr. Robertson properly argues in his first and second points and the State concedes, the conviction for first-degree property must be reversed because the damage amounted to $250.00. Entering a conviction for first-degree property damage was prejudicial error; Mr. Robertson was sentenced beyond the statutory range. The maximum sentence for second-degree property damage, a class B misdemeanor, is six months. § 569.120.2; § 558.011.1(6). Notwithstanding, the evidence was sufficient to sustain a conviction for second-degree property damage—the offense submitted to the jury in the instructions. Thus, we reverse the first-degree property damage conviction and sentence, enter a conviction for second-degree property damage, and remand to the trial court for sentencing on the second-degree property damage conviction.

■ Finally, Mr. Robertson argues that the trial court erred in denying his request to quash the venire panel because it did not represent a fair cross-section of the Jackson County community in violation of the Sixth Amendment and section 494.400. Before jury selection, Mr. Robertson moved to quash the venire panel because only 16 out of 45 venirepersons were from a Kansas City address, and only 7 out of 45 venirepersons were minorities, of which six were African–American and one was Latino. The trial court denied the request. On appeal, Mr. Robertson claims that a fair cross-section of the community would have contained ten African–Americans and two Latinos on the venire panel because Jackson County is composed of 23.3% African–Americans and 5.4% Latinos according to the 2000 U.S. Census.

To establish a violation of the fair cross-section requirement, Mr. Robertson was required to show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process." *Ringo v. State*, 120 S.W.3d 743, 747 (Mo. banc 2003) (internal quotation marks and citation omitted). Mr. Robertson's statistical evidence is insufficient to establish a violation of the fair cross-section requirement because his evidence only concerns his venire panel. *See Taylor v. State*, 198 S.W.3d 636, 644 (Mo. App. S.D.2006) (holding a defendant fails to show underrepresentation when his proffered evidence only concerns the racial composition of his venire panel rather than several venire panels). Because Mr. Robertson's evidence did not satisfy the aforementioned test, the trial court did not err in failing to quash the venire panel.

### Conclusion

In summary, we grant Mr. Robertson's first and second points, partially grant and partially deny his third point, and deny his fourth point. We vacate the conviction and sentence for first-degree property damage and affirm the judgment in all other respects. We enter a conviction for second-degree property damage and remand to the trial court for sentencing.

JAMES M. SMART, JR., and RONALD R. HOLLIGER, J. concur.